STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| In re: Sorrentino Building Site Application | } | Docket No. 231-10-07 Vtec |
| (Appeal of Sorrentino) | } | |
| | } | |

Decision and Order on Pending Motions

Appellant Alfonse Sorrentino appealed from a decision of the Development Review Board (DRB) of the Town of Woodstock, determining that his application to develop a residential building site in the Scenic Ridgeline overlay district was incomplete. Appellant-Applicant is represented by Kirk C. Kardashian, Esq., and Robin Stern, Esq.; the Town is represented by Todd C. Steadman, Esq.

The Town has moved to dismiss Questions 5 and 6 of the Statement of Questions,[1] and both parties have moved for summary judgment. The following facts are undisputed unless otherwise noted.

Town's Motion to Dismiss Questions 5 and 6

Because this appeal is <u>de novo</u> rather than on the record, the question of what the DRB required from Appellant or from any similarly situated applicants is not relevant, unless Appellant intended to make a constitutional equal protection argument not

---

[1] Questions 2 through 6 of the Statement of Questions are posed in terms of whether the DRB erred in various ways. However, the Town of Woodstock has not adopted the procedures necessary for appeals from its decisions to be on the record. Compare 24 V.S.A. §§ 4471(b), 4472(a) (third sentence), and V.R.E.C.P. 5(h) (explaining on-the-record appeals), with 24 V.S.A. § 4472(a) (second sentence), and V.R.E.C.P. 5(g) (explaining <u>de novo</u> appeals). For the purposes of the present motions, this decision will treat those questions as if they had been stated in <u>de novo</u> terms. As the appeal is resolved on the basis of these motions, we will not require Appellant to file a restated Statement of Questions.

1

explicitly stated in Question 5.  See <u>In re Letourneau</u>, 168 Vt. 539, 549 (1998) (regarding the required showing in an enforcement context as to selective treatment); see also <u>In re Valois Airplane Storage Application</u>, No. 254-11-07 Vtec, slip op. at 10–11 (Vt. Envtl. Ct. Sept. 23, 2008) (Wright, J.).

Similarly, because this appeal is <u>de novo</u> rather than on the record, the accuracy of the DRB's minutes is not relevant in the present appeal.  Appellant does not claim that this matter should be remanded for the DRB to correct deficiencies in a decision reflected in the minutes.  See V.R.E.C.P. 5(i); <u>e.g.</u>, <u>In re Chandler Repair and Home Industry Application</u>, No. 79-4-07 Vtec, slip op. at 2, 4 (Vt. Envtl. Ct. Feb. 19, 2008) (Wright, J.).

Accordingly, the Town's motion to dismiss Questions 5 and 6 must be GRANTED.


<u>Cross-Motions for Summary Judgment</u>

Appellant owns property located on Golf Avenue in the Residential Five Acre zoning district; a portion of the property is also located in the Scenic Ridgeline overlay zoning district.  Appellant is an architect who intends to design the single-family house at issue in the present proceedings.

Development of a single-family dwelling in the Residential Five Acre district (but not also within an overlay district) requires only an administrative permit to be obtained from the Administrative Officer.  §§ 302(C)(2), 707, 708(B)(2).[2]  However,

---

[2] All references are to sections of the Town of Woodstock Zoning Regulations, as amended through August 7, 2007, unless otherwise noted.  We note that amendments to § 406 of the Zoning Regulations, Scenic Ridgeline Review, were adopted on December 18, 2007; however, neither party suggests that those amendments were applicable to the August 2007 application at issue in this proceeding.  See 24 V.S.A. § 4449(d) (requiring that applications submitted after the date of public notice for the first public hearing on an amended zoning ordinance be reviewed under the proposed regulations).

development of a single-family residence in the Scenic Ridgeline overlay district also requires DRB[3] action under § 406. One issue raised by the present motions is whether § 406 also requires conditional use review for projects in the Scenic Ridgeline overlay district, §§ 406(D)(1), (2), 708(C), 710, even if such a project is exempt from § 406(F) scenic ridgeline review due to a non-visibility determination, § 406(E)(2)(a).

In October of 2005, Appellant had received an Administrative Permit (the 2005 Permit) to build a single-family home on a portion of his property that was not in the Scenic Ridgeline overlay district. However, after receiving this permit, he determined that the permitted residence would be quite visible from town highways, contrary to his own wishes and the purposes of the Scenic Ridgeline overlay regulatory scheme.

In August of 2007, Appellant therefore submitted a new application for conditional use approval[4] (the 2007 Plan) to place the house on a portion of his property within the Scenic Ridgeline overlay district, but placed so that it would be screened from visibility by what he characterized (in the Project Description appended to his application) as a "thick wall of mature hemlock trees." Under the 2005 Permit some of these trees would have been removed for construction of the house and its driveway. The 2007 Plan depicts the stand of mature hemlocks with the note: "existing 100 foot hemlocks to remain as necessary to provide adequate screening."

The 2007 Plan also depicts the footprint of what is depicted on the plan and labeled as the "proposed residential building envelope,[5]" and shows the "limits of

---

[3] The Zoning Regulations still refer separately to the Planning Commission and the Zoning Board of Adjustment; this decision will refer to the DRB as the Town of Woodstock now has a DRB.

[4] See Appellant's Ex. 1 at 3. This form, entitled "Overlay Zoning Conditional Use Support Statement," was submitted by Appellant as part of his 2007 application.

[5] The term "building envelope" is commonly used to indicate a two-dimensional area laid out on a plan or topographical map. See In re Rouleau Property Appeals, Nos. 231-12-04 Vtec, 29-2-05 Vtec, 192-9-05 Vtec, 28-2-05 Vtec, 193-9-05 Vtec, slip op. at 4 (Vt. Envtl. Ct. Nov. 17, 2006) (Wright, J.). The term may be used in the sense of all of the

disturbance" as just outside that footprint.  Note 6 to the 2007 Plan gives the dimensions of this "proposed residential building envelope" as "length = 230', width = 100', height = 35'."  That is, Appellant provided the maximum extent of the volume of space within which the building would be constructed.[6]  He requested in his Project Description that the Conservation Commission use that maximum volume to determine whether any portion of it would be visible, as required by § 406(E)(2)(a).

Appellant did not at that time submit the building elevations required for an administrative permit application by § 708(B)(2)(c), as he was applying first for conditional use approval and wished to obtain the non-visibility determination at the outset.  He preferred not to design the building until the Conservation Commission would have determined that the entire potential building volume is not visible from any Town highway, and therefore that review by the DRB under the Scenic Ridgeline overlay district criteria in §§ 406(F) and (G) would not be required.

In August of 2007, Appellant submitted the 2007 Plan application to the Zoning Administrator, who forwarded it[7] to the Conservation Commission for the required visibility determination applicable to projects in the Scenic Ridgeline overlay district pursuant to § 406(E)(2)(a).  Under that section, the Conservation Commission must

surface area of the property within which a building legally could be built, e.g., In re LaBounty Enters. Variance Application, No. 18-2-06 Vtec, slip op. at 4 (Vt. Envtl. Ct. July 14, 2006) (Durkin, J.), or in the sense of a smaller proposed development area within which an applicant actually proposes to place a building, e.g., In re Anne C. Rose Revocable Trust Bldg. Permit, No. 290-12-07 Vtec, slip op. at 3 (Vt. Envtl. Ct. Sept. 30, 2008) (Wright, J.), aff'd, No. 2008-450 (Vt. Mar. 5, 2009) (unpublished mem.).  Because Appellant actually proposed a maximum potential building volume, this decision will not otherwise use the term "building envelope."

[6] Appellant does not plan to construct a residence that would occupy the entire volume of this volume of space; the actual residence would occupy only a portion of it.

[7] The Zoning Administrator must have determined the application to be complete, as the time period for § 406(E)(2)(a) action by the Conservation Commission is measured from "receipt by the Zoning Administrator of a complete application."

determine whether "the proposed land development will be visible to the naked eye from at least one vantage point on Class I and II town highways, or from at least two vantage points on Class III town highways, with those vantage points being separated by at least 500 feet." This visibility or non-visibility determination is solely within the jurisdiction of the Conservation Commission under § 406(E)(2)(a); the DRB does not participate in that determination and the Regulations do not give the DRB any authority to change, disregard or overrule the Conservation Commission's visibility[8] or non-visibility determination.

Section 406(E)(2)(a) exempts "land development that will not be visible from any town highway" from further review under § 406. This is a self-executing provision once the Conservation Commission makes the determination that the proposed project will not be visible; that is, it does not require a ruling by the DRB. Section 406(E)(2)(a) then requires that the Conservation Commission "so report" the non-visibility exemption to the DRB.

In the present case, after a site visit, the Conservation Commission addressed the issue of visibility in its September 19, 2007 meeting. While the approved minutes reflect that some members of the Conservation Commission felt that the application was incomplete, due to the lack of a "house plan," others felt that if the site is not visible then it should not matter if a house plan is submitted or not. The approved minutes reflect that the Town Planner reported to the Commission that the site cannot be seen from any town road or state highway. The approved minutes also state that "[t]he area is heavily forested with a strong band of mature hemlock located due west of the

---

[8] If a development will be visible, the Conservation Commission must go on to prepare and submit to the DRB a report concerning the development, with recommendations. § 406(E)(2)(b),(c). The DRB does have discretion to accept, disregard, or change these Conservation Commission recommendations. § 406(E)(6). The DRB must review a visible development under the criteria contained in §§ 406(F) and (G), and may impose conditions on its approval of a visible development under § 406(H).

5

building envelope. This effectively blocks any possible views from Pine Street or South Street." The approved Conservation Commission minutes state that the following motion passed by a vote of 5-2: "based on the evidence thus far presented this site appears to be a better site than the current approved administrative permit[,]with acknowledgement that a building plan was not filed." While the phrase: "the C[onservation] C[ommission] per Section 406 E.2 states the proposed site is not visible from a town road or state highway" was deleted from the draft minutes,[9] the DRB's September 25, 2007 minutes reflect that the Conservation Commission had reported its non-visibility determination to the DRB, as follows: "[t]he Conservation Commission, with a 5-2 vote, felt that the building envelope site is not visible from any town road or state highway and therefore according to Section 406 E.2 should be exempt from Section 406 and proceed under other applicable regulations." Attach. to Joint Statement of Material Facts, Ex. 4, at 2.

At its September 25, 2007 meeting, the DRB determined that the application was incomplete "due to a lack of floor plans . . . [,] a tree plan, landscape plan[,] and grade plan," and stated that "[a]t a minimum, a design and location of structures and a tree plan . . . are required." Attach. to Joint Statement of Material Facts, Ex. 4, at 3. The DRB continued the hearing to give Appellant an opportunity to provide additional application materials; Appellant declined to do so and this appeal followed.

It is necessary to step back from the particular issues of the present case to understand the sequencing of the various permits that a given project might require. All projects, no matter where they are located, require a zoning permit (administrative permit) to be issued by the Administrative Officer. § 707. However, projects that also

_____

[9] That is, the phrase appears in the draft minutes, but not in the approved minutes. Compare Attach. to Joint Statement of Material Facts, Ex. 3, at 3 (draft minutes), with Attach. to Joint Statement of Material Facts, Ex. 2, at 3 (approved minutes).

6

require site plan approval or conditional use approval must obtain those approvals from the DRB before the Administrative Officer may issue a zoning permit. §§ 709(A) (site plan approval), 710(A) (conditional use approval). The application requirements for a zoning permit (administrative permit) are found in the several subsections of § 708(B), depending on the nature of the application. The application requirements for conditional use approval (and site plan approval) are found in § 708(C).

In some of the overlay zoning districts, additional prior evaluation and approval is required, and additional application elements are required to allow that prior evaluation to occur. For example, in the Design Review overlay district, the required application materials include a detailed scaled drawing illustrating the proposed construction. § 404. An advisory Design Review Board considers each application before making recommendations to the DRB, which acts on the Design Review application according to the criteria found in § 404(F). Design Review approval is separate from the other approvals, such as site plan approval, that may also be applicable to a particular project. See § 404(D)(3)(c)(ii) (providing that deemed approval of a design review decision does not apply to "any additional zoning requirements that may apply to the" proposed project).

The process is similar in the Scenic Ridgeline overlay district, but featuring the Conservation Commission rather than the Design Review Board. However, prior to considering the merits of the application, the Conservation Commission also has the responsibility for the crucial preliminary step of determining if the project will be visible from the specified roadways. § 406(E)(2)(a).

In addition, § 406(D)(1) also requires conditional use approval to be obtained for land development in the Scenic Ridgeline overlay district; § 406(D)(2) allows the applicant to request concurrent review from the DRB of the conditional use approval requirements and the scenic ridgeline criteria (for projects that are subject to both sections). Section 406(D)(1) is entitled "Prohibition Without Approval," and reads in

7

full as follows:

> Notwithstanding any other provisions in these Regulations, except as hereinafter provided, no land development shall take place in any Scenic Ridgeline District without the applicant first obtaining conditional use approval of a plan for such development from the [DRB].

That requirement in § 406(D)(1) contains two modifying initial clauses, which are not a "model of clarity" in legislative drafting and have resulted in some of the confusion in the present appeal. E.g., Brattleboro Tennis Club, Inc. v. Vermont Dept. of Taxes, 166 Vt. 604, 605 (1997) (mem.); In re Duncan, 155 Vt. 402, 407 (1990).

Zoning ordinances are construed according to the same rules that are used to interpret statutes. In re St. Mary's Church Cell Tower, 2006 VT 103, ¶ 4, 180 Vt. 638 (mem.) (citing In re Nott, 174 Vt. 552, 553 (2002) (mem.)). The Court's primary goal in construing an ordinance is to give effect to the intent of the drafters. In re Pierce Subdivision Application, 2008 VT 100, ¶ 28 (citing Lubinsky v. Fair Haven Zoning Bd., 148 Vt. 47, 49 (1986)). To determine the drafters' intent, the Court must first look to the plain language of the ordinance, In re Handy, 171 Vt. 336, 341 (2000) (citing Town of Hinesburg v. Dunkling, 167 Vt. 514, 525 (1998)), and should read the ordinance as a whole in order to give effect to every part, In re Pierce Subdivision Application, 2008 Vt 100, ¶ 28 (citing In re Stowe Club Highlands, 164 Vt. 272, 279 (1995)).

The plain language of § 406(E)(2)(a) exempts only non-visible development from § 406 review. § 406(E)(2)(a) ("Land development that will not be visible from any town highway is exempt from this Section 406 . . . ."). Nothing in the plain language of § 406(E)(2)(a) exempts non-visible development from the § 710 conditional use review required for all development in the Scenic Ridgeline overlay district by § 406(D)(1).

Appellant argues that the "except as hereinafter provided" language of § 406(D)(1) exempts non-visible development from § 710 conditional use review as well as from § 406 Scenic Ridgeline review. This interpretation is not supported by the overall purpose of § 406, and is not consistent with other provisions of § 406 when read

8

as a whole.  See In re Ambassador Ins. Co., 2008 VT 105, ¶ 22 (interpreting statute to be consistent with the statute's overall purpose); In re Margaret Susan P., 169 Vt. 252, 262 (1999) ("We interpret the statute as a whole, looking to the reason and spirit of the law and its consequences and effects to reach a fair and rational result.").

Most importantly, a proposed development may be exempt from § 406 due to non-visibility, for example, because a dense belt of trees prevents it from being visible from the specified roadways, or because the building is set back a certain distance from the edge of a cliff, or is limited to a single story.  Once it is exempt from further review under § 406, the DRB cannot use the authority of § 406(H) to impose conditions. Exemption from further review under § 406 therefore cannot also exempt a project from the requirement of obtaining conditional use approval, because the DRB then would have no mechanism by which to impose the conditions that resulted in the exemption.

Conditional use review allows the DRB to "attach such additional reasonable conditions and safeguards as it may deem necessary" to approval of a proposed development in order "to implement the purposes" of the Regulations.  § 710(C).  Non-visible development in the Scenic Ridgeline overlay district requires conditional use approval in order to ensure that the proposed development remains non-visible after development.  This interpretation of the Regulations avoids an absurd result.  See Bergeron v. Boyle, 2003 VT 89, ¶ 11 n.1, 176 Vt. 78 (citing Springfield Terminal Ry. Co. v. Agency of Transp., 174 Vt. 341, 348 (2002)) (explaining that courts avoid a statutory construction that leads to absurd results).  Thus, the requirement for obtaining conditional use approval is the means by which the DRB can ensure that the exemption conditions will be enforceable into the future.  To use the same examples as in the preceding paragraph, conditional use approval can impose the conditions that the project be constructed according to certain plans, that a dense belt of trees not be cut down, that a building be located so that it is set back a certain amount from the edge of a cliff, or that a building be limited in height or lateral extent.

9

In this way, it gives effect to all sections of the ordinance to interpret the "hereinafter" of "except as hereinafter provided" as referring only to the remaining subsections of § 406(D). See In re Pierce Subdivision Application, 2008 Vt 100, ¶ 28 (citing In re Stowe Club Highlands, 164 Vt. 272, 279 (1995)). That is, § 406(D)(1) prohibits "land development" in the Scenic Ridgeline overlay district without conditional use approval. The term "land development" is otherwise only defined in the state enabling statute (adopted by reference for administrative permits in § 707). For the purposes of § 406(D), land development is more specifically defined by a list of covered activities in § 406(D)(3). Therefore, to interpret "except as hereinafter provided" to modify the term "land development" in § 406(D)(1), referring to the types of land development listed in § 406(D)(3), is a rational interpretation of the ordinance as a whole. See also In re Curtis, 2006 VT 9, ¶¶ 6, 8, 179 Vt. 620 (mem.) (citing State v. Teachout, 142 Vt. 69, 73 (1982)) (giving effect to more specific provision of zoning ordinance over more general provision that could apply to the same activity); In re Binkhorst Lake Access, No. 286-12-07 Vtec, slip op. at 5–6 (Vt. Envtl. Ct. Mar. 9, 2009) (Wright, J.).

Under this interpretation, § 406(D)(1) requires conditional use review for all proposed projects in the Scenic Ridgeline overlay district that meet the more specific definition of "land development" in § 406(D)(3). The "except as hereinafter provided" language in § 406(D)(1) does not refer to any of the provisions of § 406(E), so that it does not exempt non-visible development from conditional use review. Therefore, an application for development in the Scenic Ridgeline overlay district that meets the definition of "land development" in § 406(D)(3), such as the application submitted by Appellant in the present appeal, requires conditional use approval under § 710. As the Conservation Commission has determined that Appellant's proposed development will not be visible under § 406(E)(2)(a), scenic ridgeline review under § 406(F)–(H) is not required.

10

With regard to the completeness of the application, it is necessary to examine the separate application requirements necessary for the scenic ridgeline visibility determination, for conditional use approval, and for the zoning permit (administrative permit).

A complete application for scenic ridgeline review does not require prior application for the zoning permit (administrative permit). It does require the applicant to submit an application for conditional use approval (§§ 710, 708(C)), as well as the elements required by § 406(E)(1): the location of the proposed land development, in relation to the district and the topography; a to-scale map or sketch of the property, with the area to be developed clearly indicated; a detailed description, including the type and extent of the proposed development; a utility plan; and a tree plan, showing where trees will remain, be thinned, and be removed.

Appellant provided all of the elements[10] required by § 406(E)(1) in the present application, thereby allowing the Conservation Commission to make the non-visibility determination. Appellant provided three different site plans, which together meet the requirements of §§ 406(E)(1)(b), (c), and (e), as well as the detailed description required by § 406(E)(1)(d). Appellant provided the Conservation Commission with a maximum potential building volume, that is, a three-dimensional block of space within which the building would be proposed to be built; this showed the complete "extent[11] of proposed

_____

[10] In terms of the utility plan required by § 406(E)(1)(f), the 2007 Site Plan shows the location of the proposed driveway and the approved septic sites. Most of the driveway depicted on the 2007 Site Plan is not located within the Scenic Ridgeline overlay district. The parties do not discuss in their memoranda whether a more detailed utility plan was needed by the Conservation Commission to make the visibility determination.

[11] A two-dimensional building envelope would not have been sufficient for the Conservation Commission to carry out its task, because it would not show the potential height of the volume of space, from which the Conservation Commission could determine whether it would be visible.

11

development" required by § 406(E)(1)(d).[12]  The method used by Appellant of providing a maximum potential building volume was sufficient for the Conservation Commission to make the visibility determination required by § 406(E)(2)(a).

Appellant may not have provided all the elements required by § 708(C) for the DRB to perform conditional use review; it is ordinarily for the DRB to determine if it requires more information for that purpose.  The tree plan provided by Appellant may not be sufficient for the purposes of conditional use review or the establishment of enforceable screening conditions as to the extent to which trees will remain or be removed from the screening stand of hemlocks.  Furthermore, if Appellant provided a site plan depicting proposed "landscaping, fencing, and screening," § 708(C)(3)(d); a "[c]onstruction sequence and time schedule for completion of each phase," § 708(C)(4); and confirmation of on-site septic approval from the Town and the State, § 708(C)(5), these materials have not been provided to the Court.  The DRB, and hence this Court in a de novo appeal, may require additional information pursuant to § 708(C)(3)(d) and § 708(D).

On the other hand, nothing in the applicable version of the Zoning Regulations requires an applicant to submit an application for the administrative permit prior to or concurrently with an application for conditional use approval.  Rather, the DRB's work on conditional use approval (or on site plan approval for projects that require it) must be completed before the administrative officer may rule on the zoning permit (administrative permit) application.  §§ 709(A), 710(A).  Although ordinarily an applicant submits all the applications concurrently, an applicant is entitled to postpone the submittal of the final zoning permit application until after obtaining the other prerequisite approvals from the DRB.  See §§ 707, 708(B).  For a single-family dwelling,

---

[12] The site plan showed the extent of disturbance of the trees on the site as being coterminous with the lateral extent of proposed development, and showed the stand of mature hemlocks proposed to be retained as necessary to block visibility.

12

it is only in § 708(B)(2)(b) and (c) that a site plan showing the location of all proposed structures, and an "[e]levation plan (showing all sides of building)" is required.  The materials required by § 708(B)(2) must be submitted by Applicant to obtain an administrative permit before the proposed residence can be constructed, but they were not necessary to the Conservation Commission's determination of visibility under § 406(E)(2)(a), nor are they required to be submitted prior to conditional use review under the applicable versions of §§ 708(C) and 710.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that the Town's Motion to Dismiss Questions 5 and Question 6 is GRANTED.

Both parties' Motions for Summary Judgment are GRANTED in part and DENIED in part, as follows:

As to Question 1, Appellant's application met the requirements of § 406(E)(2)(a) for a determination of non-visibility, and therefore does not require further review under § 406(F), but Appellant's application requires conditional use approval prior to its being considered for an administrative permit from the Administrative Officer under § 302(C)(2).

As to Questions 2 and 4, summary judgment is GRANTED to Appellant; the application was complete to the extent required for the Conservation Commission to make its visibility determination under § 406(E)(2)(a), and with regard to the minimum requirements of § 708(C) for conditional use approval, although the DRB may require additional information in the context of conditional use approval.  § 708(D).

As to Question 3, summary judgment is GRANTED in part to Appellant, in that it is the Zoning Administrator who has authority to determine whether an application under § 406 is complete to the extent required for the Conservation Commission to make a visibility determination under § 406(E)(2)(a), but in part

13

to the Town, in that the DRB has the authority to determine whether an application for conditional use approval is complete.

This decision appears to conclude the issues raised by the Statement of Questions in this appeal. However, while consideration of an application for conditional use approval must ordinarily be performed by the DRB prior to its consideration by this Court, Appellant's 2007 application <u>was</u> an application for conditional use approval, see n. 4, <u>supra</u>, which the DRB should have proceeded to consider[13] as soon as it received the non-visibility determination from the Conservation Commission. Accordingly, a telephone conference has been scheduled (see enclosed notice) to determine whether Appellant wishes to proceed in this Court with the conditional use application, or whether the case should be concluded in this Court and remanded for the DRB to rule on the conditional use application, and for the Administrative Officer thereafter to rule on an application for the zoning permit (administrative permit). Please be prepared to discuss at the conference the application requirements for both remaining approvals, whether there is any disagreement as to which version of the Zoning Regulations is applicable, and whether mediation may now be appropriate in this matter.

Done at Berlin, Vermont, this 6th day of April, 2009.

_____
Merideth Wright
Environmental Judge

---

[13] Under the regulations applicable to the 2007 application.